[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 512 
The judgment at Special Term is well vindicated and sustained, by the very satisfactory dissenting opinion of Judge BOCKES, in the Supreme Court. His review of the evidence and statement of the law leaves but little, if any thing, that need be said in favor of a reversal of the order granting a new trial, and affirming the original judgment for the plaintiffs. The rights of the plaintiffs and the defendant to the occupation and use of the Hudson river, for the business in which they were respectively engaged, were not the same, or to be judged by the same rules, although within certain limits both had lawful right, the one to navigate, and the other to occupy the bed of the river.
The Hudson river, at the point of the injury, is a public navigable stream, and those navigating it for commercial purposes, and using it as a highway for vessels, have the primary and paramount right to it, and every interference *Page 514 
with, or obstruction of the navigation, or hindrance to the free passage of vessels upon it, is prima facie a nuisance and unlawful. (People v. Vanderbilt, 38 Barb., 282; affirmed,26 N Y, 287.)
In furtherance of commerce and travel slight obstructions, and such as may temporarily interrupt the passage of vessels, or occasion a cursory inconvenience, but which do not materially impair navigation, are made lawful and tolerated by reason of the greater public good that results from these inconsiderable disturbances of the right of the public to the free and uninterrupted use of navigable streams. Upon this principle the bridging of streams, the building of wharves and other like acts are permitted, the necessary obstruction in every case being reduced to its minimum. If there is an unnecessary interference with the navigation, the act becomes unlawful by reason of the excess of the limits within which obstructions are allowed in the interests of the public. (Mississippi and Miss. R.R. Co. v.Ward, 2 Blacks., 485; State v. Portland and Kennebec R.Co., 57 Maine, 402; Silliman v. Hudson R. Bridge Co., 11 Blatch., 395; S.C., 1 Black., 582; 2 Wall., 403.) Telegraphs, and as a consequence telegraph wires, are a commercial and business convenience, if not necessity, and a public benefit. There is a necessity that the lines of communication should not be interrupted by streams, and that wires and cables should be carried over or under navigable streams, as occasion may require. If slight disturbance of, or interference with the use of the streams for the purposes of navigation were the necessary consequence, telegraph companies might nevertheless be permitted, within the limits named, to pass their wires over or under the stream, so constructing their works as not unnecessarily or materially to interrupt or annoy commerce and navigation. From the evidence in this case it is quite evident that the wires and cables, in making continuous telegraph lines, can be so placed in the bed of the stream, or carried over them, as not in the least, or under any circumstances, to interfere with the unobstructed use of such streams for the purposes *Page 515 
of navigation. It must be so in view of the service for which telegraph wires and cables are placed. If they are liable to be displaced or disturbed by, or to come in collision with every passing vessel they will be necessarily unreliable for the delicate and constant work to which they are applied. It can only be when improperly laid, or they have become displaced, that vessels adapted to the navigation can come in contact with, and either cause injury to or receive injury from them. The legislative permission, under which the defendant carried its cables across the Hudson river, recognized this fact; and is subject to the condition that the lines of telegraph shall not be so constructed across any of the waters within the limits of the State as to "injuriously interrupt the navigation of said waters." (Laws of 1848, chap. 265, § 5.) Navigation is injuriously interrupted when the channel of the river is made less safe, and ships and vessels are hindered, delayed or injured. Telegraph cables so laid or suspended in the water as to catch upon the keels, or come in contact with vessels navigating the stream, with such draught as the depth of water will permit, and which, but for such cables, would pass without difficulty or interruption, are improperly placed, and do injuriously interrupt navigation. They violate the condition annexed to the permission given by statute to construct telegraph wires across the navigable waters of the State.
A prima facie case was made against the defendant when the plaintiffs proved that the steamer, adapted, in all respects, to the navigation of the river, and which had for years, and in safety, passed over this part of the stream almost daily, and requiring less depth of water than other vessels passing over at the same point without grounding, had come in contact with the defendant's cable and received injury. The very fact of a collision and consequent injury unexplained, authorized the finding that the defendant had, by its cables, unlawfully obstructed the navigation of the river, and caused the damage. The defendant had so constructed its line across the waters of the Hudson river as to interrupt navigation; and the cable so placed, or suffered, as to injure passing *Page 516 
vessels was pro tanto a public nuisance. (Renwick v.Morris, 3 Hill, 621; S.C., affirmed in error, 7 id., 575.) There is no proof to detract from the force of the evidence of the fact stated, or the inference to be drawn from it. It is claimed that the proof was, that this cable was, when laid, the year before the accident, placed upon the bed of the river, and sufficiently slack so that it could not have been held in suspense, in crossing the navigable channel above the bed of the stream, by its fastenings at either pier. Such was the opinion and belief of the witnesses, honestly entertained, but they could not, and did not, see the bed of the river; and if there had been no possibility of its having become misplaced before the time of the injury to the plaintiff's vessel, the fact would still remain that it did come in contact with the steamer as she passed over, not touching bottom, and drawing only her usual depth of water, and less than that required by other vessels, and the court would have been compelled to give due effect to this as against the honest opinion and judgment of the witnesses on the part of the defendant. There was also proof that other cables, laid before this was laid, had, when taken up, furnished evidence that they had lain upon or beneath the bed of the river. That may well have been. There were ten cables laid at the same place, but at different times, and during different years, and there is the significant fact that, upon this occasion, the other nine cables were not disturbed, showing that this one cable probably was not upon the same level with the others.
The judge found, at the request of the defendant's counsel, that the plaintiffs' steamer drew seven and a half feet of water. The proof was that other vessels passing the river at the same point drew eight feet. It was nearly full tide at the time, and the tide at that point is from one to two feet, the witnesses differing as to its height. The steamer was in the right or western channel, in which the water was deeper than in the eastern. She had come from Troy with her tow, and passed, without touching, so far as appears, a bar between Troy and Albany, upon which the water was more shallow *Page 517 
than under or below the bridge at Albany, and there can be no pretence, upon the evidence, that she grounded or touched bottom under the bridge, or when she was caught by the cable. The judge was clearly warranted in his finding of facts.
The claim that the plaintiffs were guilty of contributory negligence cannot be sustained. Indeed, the question is not in the case. The plaintiffs were lawfully navigating the river, in the usual manner, with a proper vessel, well manned and cared for, and, as against the defendant, had the exclusive right to the channel. The defendant was a wrong-doer, and the fact that, on other occasions, vessels had felt the cables of the defendant, receiving no injury from them, did not impose upon navigators the duty of changing the structure of the vessels, or to feel their way to avoid a collision. They did not navigate the river at their peril, because of the knowledge of these casual contacts. Had the plaintiffs run their boat, knowingly and rashly, into danger foreseen or known to them, the case would be different. They might, in that case, have been debarred of their action within the maxim volenti non fit injuriæ. There was no satisfactory evidence of any defect in the plaintiffs' steamer; certainly none that they had any knowledge of such defect, if any existed. The evidence does not necessarily lead to the conclusion that the "scag" was loose. It could not have been so loose as to have rendered her unfit for navigation. But if it were so, it is no justification to the defendant, provided it was not so loose as to interfere with the cable if properly laid. The plaintiffs were not compelled to keep their boat in the best possible repair and condition as against a wrong-doer.
The order granting a new trial must be reversed, and the judgment at Special Term affirmed.
All concur; MILLER, J., not sitting.
Order reversed and judgment accordingly. *Page 518