CALIFORNIA NAVIGATION & IMPROVEMENT CO. v. UNION TRANSP. CO. et al.†

(Circuit Court of Appeals, Ninth Circuit. February 21, 1910.)

No. 1,769.

1. COLLISION (§ 123*)—DAMAGES—BURDEN OF PROOF.

The burden of proof to establish the amount of damages recoverable for an injury to a vessel in collision rests upon the party demanding compensation.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 259–261; Dec. Dig. § 123.*]

2. COLLISION (§ 124*)—MEASURE OF DAMAGES—EVIDENCE.

Where a vessel sunk in a river by collision was not surveyed, was allowed to remain four months before being raised, was injured by rough and unskillful handling in raising, and allowed to stand in a port for eight months longer full of water and without care or protection, whereby she

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied April 25, 1910.

was further seriously damaged, the price at which the wreck was then sold cannot be taken to indicate her value after collision; but the only way in which the damages caused by collision can be even approximately estimated is to establish her value before collision and immediately afterward before being raised, which must be shown by competent evidence, and subtract one from the other.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 265; Dec. Dig. § 124.*]

Appeal from the District Court of the United States for the Northern District of California.

Petition in admiralty by the California Navigation & Improvement Company; the Union Transportation Company and others, claimants. From the decree, petitioner appeals. Retained for further proof.

Charles Page, Edward J. McCutchen, Samuel Knight, and A. L. Levinsky, for appellant.

Nathan H. Frank (Campbell, Metson & Campbell, of counsel), for appellees.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

HANFORD, District Judge. The litigation in this case is to determine the rights and liabilities of the respective parties consequential to a collision between the Mary Garratt and the Dauntless, two stern wheel river steamboats, which happened on the San Joaquin river, in the month of August, 1901. The Mary Garratt rammed the Dauntless, cutting a large hole in her side, admitting a flow of water which caused her to sink. By a petition filed conformably to the statutes and rules, under which a shipowner may avoid liability for a maritime tort in excess of the value of the offending vessel and her pending freight, the owner of the Mary Garratt, which is now the appellant in this court, contested its liability for any damages, and also prayed that its liability, if any, be limited as the statute prescribes. The owner of the Dauntless appeared and answered the petition, and, after a trial upon the issues joined, the District Court rendered an interlocutory decree placing the blame for the collision upon the management and navigation of the Mary Garratt, and granting the petition for a limitation of liability. Thereupon the case was referred to a commissioner to ascertain and report the amount of the damages. He reported the amount of damages to be $35,834, which amount exceeds the appraised value of the Mary Garratt and her pending freight. That award was confirmed by the District Court, and a final decree was entered accordingly for a pro rata share of the available fund, and an appeal was then taken to this court. The appellant does not now dispute the correctness of that part of the District Court's decision which fixed the responsibility for the collision upon the officers and crew of the Mary Garratt, and the appeal brings to this court for decision only the remaining question as to the amount of damages which the owner of the Dauntless is lawfully entitled to recover.

The general principle governing courts of admiralty in assessing damages recoverable by the owner of an injured vessel free from fault, in a suit against an offending vessel or her owner, has been clearly

stated by this court in an opinion written by Judge Morrow, in the case of The Rickmers, 142 Fed. 305, 73 C. C. A. 415, as follows:

"'Restitutio in integrum' is the rule of damages in collision cases, and. where repairs are practicable, the general rule followed by admiralty courts in such cases is that the damages assessed against the respondent shall be sufficient to restore the injured vessel to the condition in which she was at the time the collision occurred. The Baltimore, 8 Wall. 377, 385, 19 L. Ed. 463; The Atlas, 93 U. S. 302, 307, 23 L. Ed. 863. If, however, the injuries are of such a character that they cannot be repaired at reasonable cost, an allowance may be made for actual or permanent depreciation, for the reason that an attempt to make complete repairs would involve an expense greatly disproportionate to the amount of such depreciation. Petty v. Merrill, 9 Blatchf. 449, Fed. Cas. No. 11,050. But this allowance in a collision case is subject to the general rule that damages which are uncertain, contingent, or speculative cannot be recovered, and under this rule it has been held that there is uncertainty when the nature of the damage cannot be determined. It follows that, to recover damages over and above repairs for actual cost or permanent depreciation, the nature of such damages must be clearly established, and not be left to speculation or uncertainty."

This court deems the rule thus stated to be applicable to the case in hand, and will endeavor to make an award of damages as nearly as possible commensurate with the amount of the loss proved, or which may be proved. In this connection it is to be observed that the onus probandi rests upon the party demanding compensation to prove his loss and the facts necessary to be ascertained and considered by the court in fixing the definite sum to be awarded. From the evidence it appears that the owner of the Dauntless declined to accept an offer made by a competent contractor to raise the steamboat promptly and deliver her at either San Francisco or Stockton for the gross sum of $5,000, and instead of that, by intermittent efforts, under the direction of several superintendents, successively, without efficient apparatus and power, the boat was raised and delivered at Stockton four months after the collision. It will be assumed that the cost of salving was $5,500, although the evidence as to the amount expended is secondary and unsatisfactory. Instead of proceeding promptly to repair the injured vessel, her owner waited until one year after the collision, and then sold the wreck at private sale for $9,500. She was then in a dilapidated condition, she was waterlogged, her upper decks and cabins were gone, her hogchains and smokestack were gone, and her hull was bulged up in the middle. In his testimony, the man who made the purchase said:

"Q. She had been repaired, and was then in Stockton? A. No, sir; not repaired. She had been floated and brought to Stockton. Her hull was full of water when I bought her. * * *

"Mr. Frank: Q. You had to reset the machinery, repair it, and clean it up? A. Yes, sir; we had to lift the wheel out. In fact, the wheel was mostly all gone—the buckets gone. We had the wheel hanging on a crane while we put the boat in dock to try and get her straightened up. The center of the boat had come up in such a shape was one reason that we got her so cheap. In the judgment of most of the steamboat men I talked to, we would never be able to get her back to shape, because the middle of her had come up in the middle, and the hogchains were all gone."

Mr. Tucker, a witness called in behalf of the owner of the Dauntless, testified that after being floated the boat was pumped dry, and that she was not hogged when she was delivered at Stockton; and

there is uncontradicted evidence proving that the hull was weakened by loosening or removing the hogchains while the work of raising the vessel was progressing. Consideration of all the evidence necessarily leads to the conclusion that there must have been considerable diminution of value of the vessel by reason of deterioration during the period of eight months preceding the sale. It is probably impossible now to prove with proximate accuracy the necessary cost of restoring the Dauntless to the condition which she was in previous to the collision.

It is usual, when a vessel has been injured under circumstances giving rise to claims by her owner for damages or insurance, to have a survey for the purpose of ascertaining the extent of the injuries and estimating the cost of repairs; but the record fails to show that there was any survey in this case. This omission is the more regrettable by reason of the neglect of the witnesses who might have qualified themselves to give intelligent testimony as to facts affecting the question of damages to notice or remember the most important details or to ascertain or estimate either the value of the boat in her wrecked condition or the cost of repairs. Mr. Whitelaw sent a representative of his wrecking company to make a survey for the purpose of estimating the cost of repairing the vessel, and it is probable that he might give desirable information; but he was not called to testify.

As at present advised, the court holds that the only way in which the damages may be liquidated, consonant with equity, will be by allowing to the owner of the injured vessel a sum, as nearly as can be ascertained, equal to the difference in her value before the collision and in her condition after sinking and before any expenditure for raising her had been made. This is apparently what the commissioner endeavored to do; but his award is certainly erroneous, because not based upon proof of all the essential facts. It is obviously unfair to accept the price which the vessel was sold for at private sale after further deterioration, by rough usage in raising her and for want of care during a long period of time, as the criterion for judging her value at the time when the liability of the petitioner became fixed. To ascertain the difference between the values in the different conditions of the vessel, both factors must be given so that the lesser may be subtracted from the greater. To render a just decision, the court should be informed by evidence as to her value or condition in the situation in which she was immediately after the collision and the reasonable cost of her restoration. We do not find in the record any competent evidence covering this ground, and unless it can be supplied the court must either deny adequate compensation or make an arbitrary award as would be necessary in assessing damages for a physical injury to a person.

Being in this dilemma, the court will withhold its decision, for the purpose of giving the parties time in which to make application for leave to submit further proof, and if it can be shown that competent evidence can be produced the case will be referred to a commissioner, to report such evidence to the court.