## THOM v. CITY OF SOUTH AMBOY, N. J.

### (District Court, D. New Jersey. September 27, 1916.)

1. NAVIGABLE WATERS ⬥26(3)—HARBORS—OBSTRUCTIONS—BURDEN OF PROOF.

   On a libel against a municipality, which had laid a large sewer pipe on the bed of a bay, which, it was claimed, caused the destruction of libelant's vessel, the municipality has the burden of justifying the laying of the pipe in the harbor, and of showing that the pipe was within the then established harbor lines.

   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 152–166; Dec. Dig. ⬥26(3).]

2. NAVIGABLE WATERS ⬥19—HARBORS—OBSTRUCTIONS.

   A municipality, without authority, laid a sewer pipe on the bed of a bay about 3½ feet distant from a pier or dock. It was customary for boats to anchor in the bay, and during an unusual storm libelant's power boat was driven from its moorings toward the dock, and wedged between the pipe and the dock. As so wedged, the boat was destroyed by the pounding of the sea, although, had it not been caught, it might have been saved. *Held,* that the municipality was liable for the loss of the boat, having improperly obstructed navigable waters.

   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 59–63, 67–72; Dec. Dig. ⬥19.]

In Admiralty. Libel by John C. Thom against the City of South Amboy, N. J. On final hearing. Decree for libelant.

Hyland & Zabriskie, of New York City, for libelant.

Francis P. Coan, of South Amboy, N. J., for respondent.

HAIGHT, District Judge. During the year 1910, or thereabouts, the city of South Amboy laid a sewer pipe, about two feet in diameter, from the foot of Henry street in that city out into the Raritan Bay, one of the navigable waters of the United States. For almost its entire length the pipe was laid parallel to and about 3½ feet distant from a pier or dock, which had been theretofore erected by the city. The pipe was not buried in the bed of the bay, but merely rested on the bottom, and consequently protruded up into the water a distance practically equal to its diameter. At high tide nearly all of the pipe was submerged, but the amount under water at low tide depended, very largely, upon the direction of the wind and the condition of the weather. It had been the custom for many years for owners of small boats and vessels to anchor them in and about the bay near where the pier and pipe were located. The libelant owned a small power boat, and had for some time so moored it to a buoy, which was fastened to an anchor imbedded in the bay, at a point distant about 500 feet southeasterly from the pipe and dock. There is no question but that the boat was properly and securely anchored,

and in a manner to resist any usual storm and stress of weather. However, on the 2d day of August, 1915, a violent storm arose, which caused the libelant's vessel to break from her moorings and to drift on and over the sewer pipe. She became wedged between the pipe and the pilings on which the dock was built, so that one side of the hull rested upon the pipe, at a point where there was a protruding joint made by the connection of two of the pipe sections. In a very short time, owing to the roughness of the water and the consequent pounding of the boat on the joint, a hole was stove in her bottom. She thereupon quickly filled with water, and all efforts to extricate her from the dangerous position in which she had become lodged were unavailing. During the night she broke up and became a total wreck. The evidence leaves no doubt that, if she had not become so wedged between the pipe and the pilings of the dock, she could have readily been saved with very little, if any, damage.

[1] Admittedly; if authority from the Secretary of War, was necessary, under section 10 of the Act of March 3, 1899 (30 Stat. 1151, c. 425 [Comp. St. 1913, § 9910]), to lay the pipe either in the place or in the manner in which it was laid, none was ever procured, if, indeed, it could have been, as likewise there is no evidence that any such authority was given by the state of New Jersey. Also, if it is of any materiality, which I do not think it is, I must hold that there is no evidence that the pipe was located within the then established harbor lines; the evidence attempted to be offered on that point being clearly hearsay and inadmissible. The burden of establishing these facts was, I think, on the respondent. Penn. Ry. Co. v. Baltimore & N. Y. Ry. Co. (C. C.) 37 Fed. 129. I do not decide, because it is unnecessary to do so in this case, that, even if the pipe had been located pursuant to either or both of the before-mentioned authorities, respondent would thereby be relieved from liability to answer for an injury to a vessel of a private individual lawfully using the waters of the bay, due to the location of the pipe. It was not necessary that the pipe be laid as it was; in fact, it could readily have been sunk in the bed of the bay, or placed under the pier, so as to in no way interfere with the unobstructed use of the bay for navigation.

The pipe, therefore, by reason of its location in navigable waters constituted an unlawful obstruction to navigation, and undoubtedly the respondent would have been liable for any damages sustained by one whose boat, while being properly navigated, came in contact with it, provided that due and proper warning had not been given of its existence and location. The Steam Dredge No. 6 (D. C.) 222 Fed. 576, 579; North American Dredging Co. v. Pacific Mail S. S. Co., 185 Fed. 698, 107 C. C. A. 620 (C. C. A. 9th Cir.); Omslaer v. Philadelphia Co. (D. C.) 31 Fed. 354; Blanchard v. Western Union Telegraph Co., 60 N. Y. 510.

[2] The above cases are not cited to support the general proposition regarding liability for injuries sustained by reason of obstructions in navigable waters (although they do), because it is so well settled as to need no citation of authorities; but they are cited as merely

illustrative of instances where obstructions of a similar nature have been held or considered to impose liability upon those responsible for their existence. Under the circumstances of this case, no warning would have prevented the injury which the boat sustained, so that this feature may be eliminated from consideration. The question then to be decided is whether one who has placed a pipe in navigable waters, which constitutes an unlawful obstruction to navigation, is liable to another whose vessel, when adrift without fault of the owner, is injured by reason of the obstruction. The case, so far as industrious and learned counsel have been able to enlighten me, is in that aspect one of novel impression, and although its decision is not altogether free from difficulty, I think it is governed by the general principle before stated. If in this case the location of the pipe can be said to be the proximate cause, within the meaning of the law, of the injury to the vessel, I can see no difference in principle between this and a case where a vessel, being properly navigated, is injured by collision with a pipe. In either case it is the placing of the obstruction in navigable waters which causes the injury, and the unlawfulness of the obstruction is the basis of liability. If it could be said that the obstruction was for any reason lawful, and that failure to give warning of its existence would be the real cause of liability in the supposed case, it may, with equal force, be said that the failure to properly guard the obstruction in the present case would be the ground of liability.

It is necessary, therefore, to determine whether the proximate cause of the injury was the respondent's act in laying the pipe as it did. It was certainly the efficient cause, because without it the injury would not have happened; and I think the injury was one which, in the light of attending circumstances, ought reasonably to have been foreseen as likely to occur. The respondent was charged with knowledge that it was the custom to moor boats roundabout where libelant moored his, and that it was entirely lawful to do so; that storms frequently occur of such violence as to tear any boat, situated as they were and had been for years, from its moorings; that certain winds and tides would necessarily cause a boat, so torn loose, to drift towards the pipe and the pier; that, if the water were of the proper depth to carry the boat over the pipe, its progress would be arrested and the boat held, as by a vise, between the dock and the pipe; and that in a storm of sufficient violence a boat thus caught would be injured, by pounding against a protruding joint of an iron pipe, to such an extent that in all likelihood she would sink. The injury was, therefore, the proximate cause of the respondent's act, and one which ought reasonably to have been foreseen as likely to occur.

As respondent, under the decision of the Supreme Court in Workman v. New York City, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, is unable in admiralty to avail itself of the immunity granted by the laws of New Jersey to municipal corporations from responding for injuries caused to others in the performance of governmental duties (if the act of building this sewer comes within such exemption, which I do not attempt to decide), it follows that the respondent

is liable for the damage which the libelant suffered. The vessel was a total loss, and, under the evidence, I must find that her value was not less than $500, the amount claimed in the libel.

The libelant is therefore entitled to a decree for $500, with costs.