BOWERS HYDRAULIC DREDGING CO. v. FEDERAL CONTRACTING CO.

(Circuit Court of Appeals, Second Circuit. April 30, 1907.)

No. 221.

1. SHIPPING—CHARTERS—CONSTRUCTION—DREDGES.
    Where a dredge charter provided that the dredge should be able to deposit on shore an average of 300 cubic yards of material per hour, the owner merely warranted the dredge's capacity, and not that the dredge should in fact deposit that quantity of material.

2. SAME—EVIDENCE.
    In a libel for the hire of a dredge, evidence held insufficient to show that the dredge did not pump 300 yards of material per hour, according to its warranted capacity.

3. SAME—CHARTER—CONSTRUCTION.
    Where a dredge charter provided that it should be used as the charterer or his agents might direct in dredging material and putting the same ashore on the meadows adjoining the Passaic and Hackensack rivers, or at such other localities as the charterer might direct, the charter did not cover dredging material not ordinarily found in such operations, and for which such a dredge as that chartered by reason of its peculiar construction was not adapted.

4. ADMIRALTY—APPEAL—EVIDENCE—ADMISSION—PREJUDICE.

Where, upon a proper construction of a dredge charter, it did not cover the dredging of material not ordinarily found in such dredging operations, and for which a dredge of that construction was not adapted, the charterer, in a libel for the hire of the dredge, was not prejudiced by the admission of representations made by one of its officers as to the character of the material which was to be dredged.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on respondent's appeal from a decree of the United States District Court for the Southern District of New York in favor of libelant for $2,525.62 for hire of libelant's dredge. The opinion of the District Court is reported in 148 Fed. 290.

Ed. Norris, for appellant.

H. L. Cheyney, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The material portions of the agreement between the parties are as follows:

"The owner agrees to let, and the charterer agrees to hire, the said hydraulic dredge and its appurtenances, including necessary pontoons, discharge pipe including two thousand (2,000) feet of shore pipe, derrick scow and two coal scows for and during the working season of 1905, viz., from the date of delivery of said dredge and appurtenances to said charterer at Camden, N. J., on or about the first day of April, A. D. 1905, until on or about December 1st, A. D. 1905; delivery to be made by the charterer to the owner at any locality where said dredge may be at that time.

"Said dredge and appurtenances to be used as the charterer or its agents may direct in dredging material and putting same ashore on the property of the Hackensack Meadows Company, located on the Passaic and Hackensack rivers, N. J., or at such other localities as said charterer may direct.   *   *   *

"The charterer shall pay for the use and hire of the said dredge at the rate of three thousand ($3,000) dollars per calendar month, excepting for delays at Delaware Breakwater and time lost for repairs, etc., as herein provided for, commencing on the day of delivery of the dredge at Camden, N. J., and at and after the same rates for any part of a month, hire to continue until redelivered to the owner as hereinbefore specified delivery to be made in same good order as when received by the charterer, ordinary wear and tear only excepted; payments to be made as hereinafter provided, and in case of default of such payment or payments as herein provided the owner shall have the right of withdrawing the said dredge from the service of the charterer.   *   *   *

"It being understood and agreed that said dredge shall be able to deposit on shore an average of 300 cubic yards of material, scow measurement, through 2,000 feet of land pipe per hour."

The dredge commenced work under said contract on April 11, 1905, and the libelant on July 21st withdrew the dredge from the respondent's service, under the provision of the contract for nonpayment of the charter hire for the month of June. Payments were duly made up to July 1st, and this libel was filed to recover for the hire from July 1 to July 24, 1905, amounting to $2,322.48.

Error is assigned to the action of the court below in the following particulars:

"(1) In overruling the objections of the respondent to the   *   *   *   question   *   *   *   propounded by libelant's proctor to witness Sommers, as follows: 'Q. At the time that contract was entered into, what representations were

made to you by Mr. Thompson as to the character of the material which was to be dredged by your dredge? (Objected to as incompetent, that the contract speaks for itself. Objection overruled. Exception.) A. Mr. Thompson called on me and asked for terms for chartering the dredge to place material on Hackensack Meadow which would come from Bay Ridge or Erie Basin, and the contract was based on that statement entirely.'

"(2) In not allowing respondent damages to offset claim for hire for failure of dredge to carry out its agreement in not depositing 300 cubic yards of material per hour.

"(3) In not dismissing the libel with costs; that the contract sued upon was a land contract, and not a maritime contract; and that admiralty had no jurisdiction of this action."

The second assignment of error will be first considered. The respondent contended that the dredge did not, in fact, deposit on the shore an average of 300· cubic yards of material per hour, and that therefore libelant had broken its agreement. We do not so construe the agreement. It provided, not that the dredge should, in fact, deposit such an amount on the shore, but should be able to deposit such an amount. The evidence conclusively shows that the dredge did have a working capacity for an average of 300 cubic yards of ordinary material per hour, and that on several occasions it dredged such an average, and in fact so far exceeded it as to indicate that its actual capacity with ordinary material was from 500 to 600 yards per hour. The evidence claimed to show that the dredge did not pump 300 yards per hour falls far short of proving said fact. The testimony of the superintendent of the respondent was based merely on the recollection of an estimate obtained by measuring basins before and after dredging. Upon this point he testified that as close as he could figure the dredge averaged about 3,700 yards per day; that he measured it, and figured it up, and multiplied the length by the breadth and depth, but that he had no estimate or figures; that he did not give his estimate to the company; that the figures were in No. 2 when she sank in the Passaic river, two or three weeks before; that he had not the slightest idea how those figures were made up, or what they were, or how many days he allowed; that he did not charge up any days, but charged by the basin; and that he could not carry in his head how many hours he called a day.

Furthermore, there is no testimony in the record which shows the number of hours which were estimated in making up a day, except in so far as it may be inferred from a statement that the dredge worked constantly all the time. ·

The libelant claimed that the failure to dredge 300 yards per hour on certain occasions was due to the fact that the dredge encountered brickbats and stones in such quantity and of such a character that they materially lessened her capacity. The libelant further claimed that the dredging contract contemplated dredging for materials such as are or· dinarily found in basins, and did not contemplate any kind of material which the respondent might choose to place there. In support of this contention, the testimony was admitted to which the first assignment of error is directed. Whether or not this oral testimony was admissible, on the theory that it covered a matter concerning which the written contract was silent, need not be decided. In any event, this evi-

dence could not prejudice the rights of the respondent, because upon a proper construction of the contract it must be held that it would not cover dredging material not ordinarily found in such dredging operations, and for which such a dredge, by reason of its peculiar construction, was not adapted.

The evidence, generally, indicates that the offset claimed by the respondent was only an afterthought when the respondent found itself financially embarrassed, and therefore unable to pay libelant's bill. The testimony and correspondence between the parties shows that the respondent paid for services up to the 1st of July without making any objection to the working of the dredge, and that on September 14, 1905, after the respondent had received the bill for the charter hire during the month of July, no objection was made to the bill, except for the last day of service, when the dredge broke down; and, even as late as October 17th, the respondent promised a remittance on account of libelant's bill.

The decree, in so far as this branch of the case is concerned, should therefore be affirmed.

Upon the further question raised by the third assignment of error, as to the jurisdiction of this court, we concur in the reasoning and conclusion of the court below, as stated in its opinion.

The decree is affirmed, with interest and costs.