## THE POUGHKEEPSIE.

### THE HOMER RAMSDELL.

#### (District Court, S. D. New York. April 10, 1908.)

ADMIRALTY—JURISDICTION—MARITIME TORTS.

A collision in a navigable river between vessels and the surface part of borings made to locate an aqueduct under the bed of the river for municipal purposes is not in any sense maritime, and a suit to recover damages for injury to such borings is not within the admiralty jurisdiction.

In Admiralty.

E. Crosby Kindleberger, for libellant.
Convers & Kirlin, for claimant.

ADAMS, District Judge. This action was brought by the Phœnix Construction Company against the steamers Poughkeepsie and Homer Ramsdell to recover damages caused to certain borings, in connection with test holes in the Hudson River, off Storm King, being made for the purpose of locating an aqueduct under the river with a view to conveying water accumulated on the west side of said river to the east side thereof, and thence to the City of New York. The libel further alleges that having obtained necessary permission from the Secretary of War of the United States, the libellant commenced work on September 10, 1906, after all owners of vessels frequently passing the place, including the steamers which were the subject of this action, had been notified that said work was to be carried on by boring into the bed of the river in its navigable part and on August 30, 1907, the drill in the boring in question, No. 10, had reached a depth of 618 feet beneath the surface of the water. This boring was composed of various lengths of wrought iron pipe surrounded by a platform on the surface. On the night of August 30th, it is alleged, the said steamers negligently came into contract with said platform and pipes and damaged them to the extent of upwards of $3,000. The usual allegation of jurisdiction followed.

An answer was duly filed denying any negligence on the part of the steamers, also denying the jurisdiction of the court. The case came on for trial March 9th, 1907, and after the opening by the libellant's counsel, the claimant's counsel moved to dismiss for want of jurisdiction. An adjournment was had for the purpose of a consideration of the question so raised.

It can scarcely be doubted that unless the admiralty jurisdiction has been extended by the decision in The Blackheath, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236, it does not exist in a case of this kind. It was thought that such case broadened the jurisdiction so as to cover one of dredging, which theretofore had been deemed non-maritime— In re Hydraulic Steam Dredge No. 1, 80 Fed. 545, 25 C. C. A. 628—

and I so decided in a case of that nature—Bowers Hydraulic D. Co. v. Federal Contracting Co. (D. C.) 148 Fed. 290. On appeal this was affirmed upon the reasoning here—153 Fed. 870, 873, 83 C. C. A. 52. The Supreme Court, however, has recently, February 24th last, decided in The Cleveland Terminal R. R. v. Steamship Co., 208 U. S. 316, 28 Sup. Ct. 414, 52 L. Ed. 508, and The Troy, 208 U. S. 321, 28 Sup. Ct. 416, 52 L. Ed. 512, that it was not intended in The Blackheath to overrule former decisions with respect to jurisdiction. It was said by Mr. Chief Justice Fuller (pages 320, 321 of 208 U. S., pages 415 of 28 Sup. Ct. [52 L. Ed. 508]):

"It is unnecessary to cite the numerous cases to the same effect to be found in the books. The rule stated has been accepted generally by bench and bar, and has never been overruled, though counsel express the hope that it may be because of our decision in The Blackheath, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236. In that case Mr. Justice Brown, in concurring, announced the view that the effect of the decision was to overrule what had previously been laid down in the cases we have cited. But the court held that the opinion was not opposed to the prior adjudications, and, without entering into the elements of distinction between the case and the The Plymouth, 3 Wall. 20, 18 L. Ed. 125, said (page 367 of 195 U. S., page 48 of 25 Sup. Ct. [49 L. Ed. 236]): 'It is enough to say that we now are dealing with an injury to a Government aid to navigation from ancient times subject to the admiralty, a beacon emerging from the water, injured by the motion of the vessel, by a continuous act beginning and consummated upon navigable water, and giving character to the effects upon a point, which is only technically land, through a connection at the bottom of the sea.'

The case was a libel in rem against a British vessel for the destruction of a beacon, number 7, Mobile ship channel lights, caused by the alleged negligent running into the beacon by the vessel. The beacon stood fifteen or twenty feet from the channel of Mobile River, or bay, in water twelve or fifteen feet deep, and was built on piles driven firmly into the bottom. The damage was to property located in navigable waters, solely an aid to navigation and maritime in nature, and having no other purpose or function.

In the present case damage to shore dock, and to bridge, protection piling and pier, by a vessel being forced against each of them by the vessel proceeded against, as well as damage to shore dock, abutment, protection piling, pier and dock foundation by a wash said to be due, to the increased current arising from partial damming of the stream by the three vessels, brought into such position by the alleged fault of the vessel proceeded against, was sought to be recovered. But the bridges, shore docks, protection piling, piers, etc., pertained to the land. They were structures connected with the shore and immediately concerned commerce upon land. None of these structures were aids to navigation in the maritime sense, but extensions of the shore and aids to commerce on land as such.

The proposition contended for is that the jurisdiction of the admiralty court should be extended to 'any claim for damages by any ship,' according to the English statute; but we are not inclined to disturb the rule that has been settled for so many years because of some supposed convenience."

A similar question to the one involved here, was presented to Judge Thomas, in the Eastern District, in the cases of the United Engineering and Contracting Company against the N. Y. N. H. & H. Tug Transfer No. 5, against the Steamtug R. J. Moran and against the Tug Lackawanna, there being three cases tried together. The libellant was engaged in the performance of a contract for the construction of a rapid transit route form Manhattan to Brooklyn, which necessitated boring test holes in the bottom of the river, and had anchored in the East River a scow and pile driver and had erected a temporary stag-

ing or platform for drilling purposes. The various tugs, or their tows, negligently collided with the scow and staging, and actions were brought by the libellant to recover its damages. The tugs were found in fault and recovery allowed for the damages done to the vessels but denied as to the staging or platform. In the opinion, dated February 24, 1903, not reported, Judge Thomas said:

"The libelant will have a decree for the damage to the scow but not to the piles. The claimant declines to raise the jurisdictional question. The court of its own motion rejects the determination of questions beyond its jurisdiction. * * *

"The damages in no case will include injury to the piles. Although they were a part of the plant, they were not on navigable waters but were attached to, and a part of, the soil. It is immaterial that they could be drawn out and floated to some other place in connection with the scow. While the piles were in use they were intended to remain in the soil, where they furnished a solid structure for holding the boring machinery, and were no more on navigable water than a caisson employed in building piers. The fact that the scow was moored to them did not change their nature, nor did the fact that steam was carried from the scow to the drilling machine give the piles the character of the scow. It would be quite as suitable to affirm that thereby the scows took on the nature of the piles. The piles were timbers driven in the bed of the river to support the machinery used for boring, and for the time became part of the land."

I am unable to see how without the authority of The Blackheath the jurisdiction here could be sustained. The project which the libellant was engaged in is not even suggestive of maritime affairs. It was supplying water to a city and the mere fact of the means being carried under the bed of a river, with extensions through the river to the surface, did not create any maritime right, nor was it in any sense an aid to navigation, which was the distinguishing feature of The Blackheath.

The libel should be dismissed.