### THE SENATOR RICE.

### THE RESOLUTE.

(District Court, E. D. New York. March 21, 1914.)

COLLISION (§ 95*)—TOW AND ANCHORED BARGE—IMPROPER NAVIGATION OF TOW.

In drilling to remove a rock in the bottom of the Hudson river about 600 feet northwest from the piers at the Battery, the contractor built a platform for the workmen, and beside it anchored a barge for use as their quarters and for storage purposes. As a tow of coal barges was passing up on the east side of the drill barge, on a strong ebb tide, it was met by another tow coming down in charge of the tug Senator Rice; the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tows passing starboard to starboard. A collision occurred between the tows which forced one of the boats of up-bound tow against the drill barge, and the platform was broken and material lost. *Held*, that the collision was due solely to the fault of the Senator Rice in attempting with such a tow and at that stage of the tide to pass between the platform and the piers, instead of to the westward, when it was her duty to pass any meeting tow port to port.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*]

In Admiralty. Suit for collision by John D. Miller against the steam tugs Senator Rice and Resolute. Dismissed as to the Resolute, and decree against the Senator Rice.

Foley & Martin, of New York City (Wm. J. Martin, of New York City, of counsel), for libelant.

Amos Van Etten, of Kingston, N. Y., for The Senator Rice.

Burlingham, Montgomery & Beecher, of New York City (Chauncey I. Clark, of New York City, of counsel), for The Resolute.

CHATFIELD, District Judge. The present alleged cause of action arises from an injury to a structure in the Hudson river, maintained there under contract with the United States government, for the removal of a rock shown upon the government charts at a point substantially northwest by west from the southerly extremity of Manhattan Island and just outside or to the westward of a straight line between the outer end of the Liberty Street pier and the southwestern extremity of the enlargement to Governor's Island. This rock, as is shown by the testimony, and as indicated upon the chart, left a clear passage of some 600 feet to a boat rounding the Battery and passing either up or down the Hudson river between the rock and the Manhattan pier line.

According to the testimony, an ebb tide also sets a boat down along the face of the Manhattan piers, almost directly upon the dock in question, and the distance saved by passing inside of the rock, when turning from the Hudson river around the Battery into the East River, is not great, but it is easier to make the turn than when passing outside.

The various transfers of title by which through bankruptcy the right to a cause of action, if any existed, has become vested in the present libelant (as purchaser from the trustee in bankruptcy), and the way in which those rights are traced back to the company maintaining the structure and having the contract with the United States government, need not be discussed, as there seems to be no substantial basis for questioning the prima facie title of the libelant. Nor do the terms of the contract with the government affect the situation.

The removal was being accomplished by the use of dynamite placed in drills in the rock, and the plant for drilling was located upon a platform erected above the water, by means of four large pointed girders or spuds some 60 feet in length, to one of which the platform was attached at each corner. This platform was 12x20 feet

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

square, and a large barge, maintained in position by anchors leading to the barge by cables, served as quarters for the men and all other purposes except the actual platform from which the work was conducted. This barge was so placed beside the platform and held firmly in position by the anchors as to cause no strain upon the platform or the spuds, and also so as not to be carried against the platform either by the ebb or flood tide.

The accident in question occurred at about 5 o'clock in the afternoon of Sunday, June 30, 1907, and is described by one of the workmen upon the barge (who seems to be the only one who can now be located) as having been the result of collision between the westernmost or port barge of a tow of empty coal boats passing up the Hudson river. This barge was forced against the boat or barge moored at the drilling platform, by contact between the starboard barge of that tow and one of two loaded boats passing down the river and still further toward the New York shore, in tow of the Senator Rice.

The tide was running strong ebb, and the testimony of the witnesses is sufficiently definite as to the actual contact between the barge and the drill boat, by which the actual injury to the platform was caused. In the deep water and swift tide, before repairs could be made or new anchorage obtained, the work boat or barge was carried against the platform, the platform itself was tipped over, breaking off one of the spuds, and the loss of much time and material resulted before things could be set to rights.

A number of incidental questions of fact have arisen in the case which seem to have no bearing upon the result and can be disposed of by mere mention.

The libelant produced a fireman of the city of New York stationed at Pier A North River, who testified that at about 5 o'clcok, on the last Sunday afternoon in June, 1907, in clear weather, with no other boat in sight in the neighborhood, he distinctly and definitely remembered seeing the steamtug Senator Rice with a tow of barges coming down the Hudson river on the Jersey side of midchannel, turn across toward New York, and attempt to come between the platform in question and the battery. This witness testified that the ebb tide carried the tow against the platform, that the tug backed away, came on around the platform, and proceeded into the East River.

These facts do not accord at all with the testimony of the other witnesses as to the collision upon which the libelant sought to recover, and the matter remained a mystery until nearly the close of the trial, when the captain of the Senator Rice, in a frank and colloquial manner, referred to another occasion than the one involved in the present action, in which, in coming down the river, he had come in collision with the platform used for dredging, under the influence of the ebb tide, and that his tow had rebounded from the platform without damage thereto, and that he had proceeded on his course.

Another matter of the same sort is raised by the bringing of the present action against the tug Resolute as well as against the Senator Rice. This tug is one of two having a stack of the sort described by the witnesses and owned by a towing company. She is shown by

the testimony of her captain, corroborated by his log, to have been near the entrance to New Haven Harbor on a trip to the eastward at the time of the accident in question, and that she could not have been in New York so as to have met the Senator Rice and her tow on the day upon which this accident occurred. The Resolute has a marking or device upon her stack borne only by the other tug of this same company around New York Harbor, and according to the testimony in the case this second tug was supposed to be laid up for repairs on this day.

It is necessary therefore to hold that the case against the Resolute has not been proven, and that whether it was the second tug of the line in question, or whether it was another tug with a tow whose identity was confused with that of the Resolute because of some similarity of marking, it is impossible to establish upon the libelant's proof, the identity of the tug concerned, and the libel at least as far as the Resolute is concerned must be dismissed.

We must, however, bear in mind the positiveness with which the witnesses identified the Resolute in considering their recollection of the occurrence which was long before the trial, and we must also consider the question of responsibility for the accident as between the Senator Rice and the unidentified or unknown tug, even though the Resolute be relieved and dismissed from the case.

In addition to the testimony of the workman upon the platform, who came out from the house in time to see the boats just after contact with the platform, we have the testimony of the master of the Senator Rice as to certain phases of the collision, and the testimony of one of the barge captains in tow of the Senator Rice, whose boat seems to have been the one directly in contact with the tow coming up the river.

According to the master of the Senator Rice, his tow was proceeding down the Hudson river, and, as he subsequently testifies, another tow of the Cornell Steamboat Company was somewhere in the neighborhood, also coming down the river. In a vague way he confuses his own position and gives, as his reason for passing between the platform and the New York shore, that the other Cornell tow, and other boats going up and down the Hudson river, forced him to take the inside course, under the influence of the ebb tide, in order to get through and to make the turn around the Battery into the East River.

It is manifest that his course down the Hudson river should have been far enough from the New York shore to safely pass port to port any tows coming up the river, and that his only reason for approaching the New York shore was to save time and distance and to easily and quickly get out of the main current of the ebb tide by making as close a turn as possible at the Battery.

It is manifest, also, that these objects could be accomplished, if the river were clear, by passing inshore of the dredging platform, but that in so doing the Senator Rice ran the risk of striking the platform or of getting into difficulties through proximity to the New York pier line, while he also ran the risk of meeting boats turning around

the Battery and into the Hudson river and proceeding up on the starboard or right-hand side of the channel.

The tow of the Senator Rice consisted of two barges—the Philbrick loaded with brick, and the Katy loaded with coal. The Philbrick was the starboard or westernmost boat of that tier. Her captain testifies that, as they were proceeding down the Hudson river, he came out on deck, and that his attention was attracted to a tow which had come up past the Battery and of which the tug had already gone by or was going by his barge. He became apprehensive that the starboard boat in the tow of this tug would not clear his own barge, and what he feared did happen. The two barges came together side by side and a small part of his rail was carried away. The effect of the collision does not seem to have been great, but the momentum of the vessels and the pressure resulting from the blow seems to have been considerable and to have moved the barge of the tow coming up the river considerably out into the river. Her momentum was checked and her sidewise movement imparted to other boats in that tow. The situation is identified by the workman upon the dredging platform, and it is apparent that the force of the ebb tide, together with the transmitted blow of the collision, caused the injury to the dredging plant at the other side; that is, with the port boat of the tow coming up the river.

The evidence indicates that the tow, coming around the Battery and up the river, could have passed safely between the dredge and the Battery, and that the tug in charge of this tow could successfully stem the tide if not interfered with by other vessels. The captain of this tug, whether it was the Resolute or some other, took the responsibility of passing through the place in question, but had the right to depend upon freedom from interference from boats passing down the river and bound to pass him port to port.

We need not consider what his position would have been or what responsibility would have rested upon him with respect to some boat coming out of the slip on the New York side. The only force which rendered it impossible for this tow to have successfully passed up the river seems to have been that of the collision of the barge Philbrick, in tow of the Senator Rice. The ordinary duty of the Senator Rice when proceeding down the Hudson river was to pass a tow coming up river on the outside or port to port, and it was negligence and breach of duty on the part of the Senator Rice to attempt to cross the river and pass through between the platform and the shore, with the tide at such a stage, and with the tow of the Senator Rice in such a position that any vessel met in this narrow space could not be passed in the proper way.

The effect of the rule upon the Senator Rice would be that, unless she were in such position as to see that no vessel could meet her before rounding the Battery, she was bound to take the outside course (where it was possible to obey the rule) or be held responsible for the consequences.

In addition to the responsibility resting upon the Senator Rice from the violation of this rule, it is apparent that the action of her captain

in attempting to work across the Hudson river, so as to go through the narrow space with a tow of the width of the one which he had upon this trip, under the conditions of tide shown, was careless and likely to land his tow against the dredge or to get him in difficulties with any other tow in the neighborhood, unless fortune favored his reckless act. Such navigation is of itself a breach of the rules and of the duty resting upon the captain of a tug in charge of a tow, and is sufficient to impose liability upon the vessel if accident results therefrom. But further than this, the position of the Senator Rice in making the turn would be such that she would be entirely too close to the New York shore and the pier heads when proceeding down with the ebb tide, and, while the accident did not result from this situation, the carelessness of such navigation adds to the persuasive quality of the proof as to carelessness in other particulars.

It appearing therefore that the dredging platform standing stationary against the force of the ebb tide was free from fault, and was injured by the impact of a barge forced against the platform through the movement of other barges, in tow of a tug as to which no fault has been shown, and it further appearing that the movement of these barges was caused by contact with the barge in tow of the Senator Rice, and that responsibility for the situation has been fixed by the negligent actions of the Senator Rice, it must be held that the libelant has made out his case and that he may have a decree against the Senator Rice, but that the libel against the Resolute must be dismissed.