POSTAL TELEGRAPH CABLE CO. v. P. SANFORD ROSS, Inc.

(District Court, E. D. New York. February 19, 1915.)

1. SHIPPING ⟨⟨⟩⟩81—LIABILITY OF VESSELS—INJURY TO SUBMARINE CABLE.
    A dredge *held* liable for negligently fouling with its anchor, and breaking and dragging from its place, a portion of a submarine telegraph cable.
    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 341, 344, 345, 347; Dec. Dig. ⟨⟨⟩⟩81.]

2. ADMIRALTY ⟨⟨⟩⟩22—JURISDICTION—SUIT FOR INJURY TO SUBMARINE CABLE—"MARITIME SUIT."
    A submarine telegraph cable, crossing a tidewater navigable channel and resting on the bottom, although fastened on shore at each end for connection with land wires, is not a structure on the land and affixed thereto as an extension of the shore; and a suit against a vessel for negligent injury thereto, where it lay on the bottom of the channel, is maritime, and within the admiralty jurisdiction.
    [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 222-234; Dec. Dig. ⟨⟨⟩⟩22.]

In Admiralty. Suit by the Postal Telegraph Cable Company against P. Sanford Ross, Incorporated. Decree for libelant.

Boothby, Baldwin & Hardy, William W. Cook, and R. H. Overbaugh, all of New York City (E. E. Baldwin, of New York City, of counsel), for libelant.

Everett, Clarke & Benedict, of New York City (E. G. Benedict, of New York City, of counsel), for respondent.

CHATFIELD, District Judge.   [1] The libelant alleges, and the proof upon the trial shows, that a dredge of the respondent, operating in the Arthur Kill, between Staten Island and New Jersey, broke apart and dragged from its place several hundred feet of insulated telegraph cable which the libelant maintained across the Kill at that point.   The dredge was then working toward the south from the Baltimore & Ohio Bridge, and operated by carrying out and dropping a heavy anchor, some hundred feet to the south, toward which, as the dredge excavated the bottom of the channel, progress would gradually be made by moving the spuds of the dredge itself.   At the same time the anchor would be slowly pulled into the dredge, and at uncertain intervals, would have to be taken up and relocated at the extremity of the chain cable by which it was held.

The captain of the dredge, on the casual statement of the government inspector, had the anchor upon this particular occasion dropped at the north side of Bayway street, assuming that the cable, which crossed at that point, went out from the south side of the street.

It is unnecessary to state the details about the finding and repairing of the cable, nor of the movements of the dredge and the anchor, from which it appears that, when the anchor was finally taken in, the broken part of the cable had slipped through the flukes thereof and was never recovered.   Some dispute arose as to whether the captain of the dredge was informed of the accident and asked to draw in the anchor chain, but this dispute does not appear to be material.

The telegraph company had installed this cable by drawing it across the channel so that it lay upon the bottom and was affixed on each side to a post on the shore.   The land cables were attached to the ends of the submarine portion and ran up the poles.   A sign was placed to indicate the cable crossing, and there is no issue presented through lack of knowledge that the cable was in the neighborhood.   The respondent would therefore seem to be responsible for the injury, and to have negligently failed to determine the exact location of the cable, so as to avoid it, even though the captain of the dredge endeavored to see that his anchor did not interfere with the cable, and had in a usually reliable way sought to ascertain how far the anchor might be carried to the south without danger therefrom.

[2] The principal question in the case arises from the objection to the jurisdiction of the court, upon the theory that the cable was a land structure, and that no maritime damage occurred of which jurisdiction can be had by an admiralty court.

The libelant has cited certain English cases in which damages to a submarine cable were considered in admiralty under the doctrine of the English law by which the locality determines jurisdiction.   It also cites the case of Stephens v. Western Union Telegraph Co., 22 Fed. Cas. 1301, and The City of Richmond (D. C.) 43 Fed. 85, in which

causes of action for injury by a cable negligently maintained were sustained, and cross-libels for injury to the cable were dismissed, without question as to the jurisdiction of admiralty. See, also, the cases of Ladd v. Foster (D. C.) 31 Fed. 827, Albina Ferry Co. v. The Imperial (D. C.) 38 Fed. 614, 3 L. R. A. 234, and The Anita Berwind (D. C.) 107 Fed. 721, where recovery was allowed in admiralty for damages to a vessel by cables.

In the case of The William H. Bailey (D. C.) 100 Fed. 115, an action for damages for cutting a cable fouled by an anchor was considered, and decree given. The statute (Act Feb. 29, 1888, 25 Stat. c. 17, § 3 [Comp. St. 1913, § 10089]) forbidding the cutting of a cable, except to save life or limb, was relied upon as one of the grounds of liability, but no question of jurisdiction was raised.

On the other hand, the claimant has cited the cases of The Plymouth, 70 U. S. (3 Wall.) 20, 18 L. Ed. 125, The Blackheath, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236, Cleveland Terminal R. R. v. Steamship Co., 208 U. S. 316, 28 Sup. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215, and the many cases cited in those opinions, as well as the case of The Poughkeepsie and The Homer Ramsdell (D. C.) 162 Fed. 494, as authority for the proposition that injury by a vessel, or from fire on a vessel, to a *structure* upon land, or connected with the land in such a way that the actual accident does not occur within the physical limits of the admiralty jurisdiction, gives no right of action in admiralty. It argues that no action can be maintained from the mere fact that a boat or its appliances was the instrument through which the force was transmitted which caused the injury at the place where it occurred.

The case of The Blackheath, supra, is always referred to, and argument drawn either way according to the facts of the particular case under observation. The cable in the present case was attached at each end to the land and rested upon the bottom, and a submarine cable is not a boat or an appliance of navigation, so as to come under the Blackheath decision in all respects.

The cases above cited, in which jurisdiction has been assumed for such an accident, seem to have been based upon the theory that the location of the cable was within the limits of navigable waters, that the injury had to do with the operations of navigation, that the cable itself was connected with the subject of navigation when occupying some portion of the navigable channel, and that the injured object (the cable) was not a structure on the land, nor affixed thereto as a part thereof.

The result of the force exerted by the anchor must have been to have raised the cable from the bed of the channel, and to have dragged it along through the water. The accident, therefore, occurred within the physical limits of admiralty jurisdiction, it was occasioned by the operations of the anchor and the handling of the boat, and the cable itself is akin rather to matters connected with the ocean than to those of the land, although it was supported at each end upon the shore, and, for the purpose of transmitting an electric current, has no closer relation per se to navigation than would a wire crossing over a stream, in the air, and which was employed to transmit news as to ships, etc.

The cable is further like a beacon or buoy, in that it is merely located at the spot, even though attached to the land at each end.

Assuming that no jurisdiction in admiralty exists under the United States Constitution over the actual sustaining of damage (and apart from the cause), unless the object damaged be on the water, or within its body, rather than on land, that is, a part of the land (The Plymouth, supra), let us consider whether this cable was a fixture so attached to the land as to be a part thereof, and in that sense a "structure" on shore.

If the telegraph company had maintained some wires across the river, in the air, and also some wires on a bridge just over the cable, the cases cited show that any injury to the bridge, or the wires on the bridge, or in the air, would not give jurisdiction to the admiralty court, even if messages were alternately sent over the wires above and below water. If a platform for dredging had been located on piles in the water, an injury thereto by a boat would likewise occur on the land, as distinguished from the locality covered by the maritime jurisdiction (The Poughkeepsie, supra, and the case of N. Y., N. H. & H. Tug Transfer No. 5 v. The R. J. Moran, therein cited).

But suppose an injury were caused to the Atlantic cables, on the high seas, by a steamer, Could it be held that, because the cable had a landing on shore, it was a land fixture, and was not an object wholly within the maritime jurisdiction, where it lay supported by the bottom and not by its own buoyancy? If so, no damage by a boat to a sunken dry dock or vessel could lie in admiralty, if there were a shore mooring, and if it could not at the time be navigated.

The case is not analogous to those where the maritime character of the object has been entirely lost, such as the case of a boat turned into a boathouse and solidly fastened to the shore. Woodruff v. One Covered Scow (D. C.) 30 Fed. 269.

This case has been fully tried, subject to the objection as to the jurisdiction of the court over the cause of action, and to relegate the libelant to another court, and a new action, should not be the result, unless the court is plainly without any authority to dispose of the issue raised upon the testimony. No part of the injury occurred beyond the limits of the tidewater, nor was the connection to the shore of any sort other than to insure a permanent passage of the current. There might even be instances where such a cable would not be carried to the shore, but rather (by induction or wireless) be used to transmit vibrations as a step in signaling. If the mere fact that it does not float, and rests on the bottom, makes an object a land fixture and structure, no admiralty court could entertain a suit for injury by a boat or anchor to a grounded vessel. While the converse case, of injury by a cable suspended in the water or lying on the bottom, has been treated as an admiralty matter (see cases cited, supra), for there the injury occurred on the maritime object, yet the objection raised to the present case is fatal, if the injured cable was not wholly the object of admiralty jurisdiction.

Any argument drawn from the results of the situation presented of necessity begs the question, and yet full discussion is necessary to

reach the primary determination. But as the court is of the opinion that a submarine cable of this sort is not a *structure* on the land and affixed thereto as an extension of the shore (208 U. S. at page 321, 28 Sup. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215), even though connected therewith as an aid to land commerce, it is therefore subject to maritime control.

The plea to jurisdiction must be overruled, and the libelant may have a decree. .