## THE SENATOR RICE.

### THE RESOLUTE.

(District Court, E. D. New York. May 26, 1916.)

ADMIRALTY ☞19—JURISDICTION—MARITIME TORTS.

A drilling platform erected upon posts or piles driven in the earth, although standing in navigable water and used for drilling in connection with the making of a channel for navigation, is a part of the land, and a suit to recover damages for injury to such platform through collision between two passing vessels is not within the admiralty jurisdiction; but damages for injury resulting from the collision to an attendant scow, from which power to operate the drills was furnished, and including demurrage for loss of use of the scow and wages of its crew during the making of repairs, are recoverable in admiralty.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 233, 234; Dec. Dig. ☞19.]

In Admiralty. Suit by John D. Miller against the steam tugs Senator Rice and Resolute. On exceptions to report of master. Sustained in part, and decree for libelant.

Foley & Martin and J. A. Martin, all of New York City, for libelant.
H. H. Flemming, of Kingston, N. Y., and James K. Symmers, of New York City, for the Senator Rice.
Burlingham, Montgomery & Beecher and E. C. Rouse, all of New York City, for the Resolute.

CHATFIELD, District Judge. The facts with regard to the collision between two tows, and the resultant injury to a drilling platform standing on spuds with a scow alongside as tender, are shown in the decision rendered in this case. 212 Fed. 960. The court found fault resulting in some damage cognizable under admiralty jurisdiction.

Upon a reference the master has ruled that the scow, which was anchored independently in the river, was subject to admiralty jurisdiction, and has allowed the damages directly made up from the items of lost anchors, ropes, etc., attached to the scow.

Power from this scow was conveyed by piping to the plant, from which, by means of a rigid tube, adapted to resist the tide, the drills were actually operated. This plant consisted of a large, heavy, and firmly fixed platform, which stood upon the bottom of the river; but its four large legs, or spuds, with sharpened lower ends, were actually driven into the bottom like piles, wherever they rested upon the mud. If the structure rested upon hard bottom or rock, it would stand upon the surface. But in either case it was a stable and solid structure, and differed from one attached to piles driven in the bottom only in degree of stability.

Under these circumstances, the master has disallowed such damages as he attributes to injuries occurring upon or to this platform. This distinction seems to be correct. The cases of Phœnix Con. Co. v. The Poughkeepsie, 212 U. S. 558, 29 Sup. Ct. 687, 53 L. Ed. 651, affirming 162 Fed. 494, and the case of United Engineering & Contracting Co. v. N. Y., N. H. & H. Tug Transfer No. 5, The Moran, and The Lackawanna (unreported, but stated in the opinion in 162 Fed. 494), as also the case of Martin v. West, 222 U. S. 191, 32 Sup. Ct. 42, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592, show that injuries occurring upon a structure constituting a part of the land or carrying out land activities (Cleveland, T. & V. R. Co. v. Cleveland S. S. Co., 208 U. S. at page 321, 28 Sup. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215) are not within the jurisdiction of the admiralty court. See, also, Postal Telegraph-Cable Co. v. P. Sanford Ross, 221 Fed. 105, in which these cases are generally discussed.

The rule apparently now well established is to the effect that a platform erected upon posts or piles and given the character of a dock or land structure, even though entirely isolated from the land and standing in navigable water, is a part of the land itself, and that acts occurring thereon are not within admiralty jurisdiction. Nor was the mere fact that the drilling was being done in connection with the making of a channel for navigation sufficient of itself to treat this entire plant as an aid to navigation, as was the beacon or buoy in the case of The Blackheath, 195 U. S. 361, 25 Sup. Ct. 46, 49 L. Ed. 236, and in the recent case of Latta & Terry Construction Co. v. The Raithmoor, 241 U. S. 166, 36 Sup. Ct. 515, 60 L. Ed. 937, decided by the United States Supreme Court on May 1, 1916, reversing 186 Fed. 849.

Hence the report of the master should be confirmed generally. Two items, however, should be allowed to the libelant which the master has excluded. The sums of $225 demurrage for loss of use of the scow, and $196.25 wages, were disallowed by the master upon the theory that the delay was caused by inability to use the platform. The master, therefore, held these items to be a part of the damage not recoverable in admiralty. But the proximate cause of all the damage was the collision. The loss of use of the scow was the loss of use of the floating vessel, and it makes no difference that the time for which demurrage is asked was coextensive with the time necessary to repair damage to something on land. If the proximate cause of the injury were something occurring on the platform, the master would be correct in his conclusion. The claimant contends that the word "damage" should be distinguished from "injury," which he claims was confined to the platform. But the "damage" in question is not the restoration or repair of the platform. It is for loss of use of the scow.

The libelant is entitled to recover in this case all the damage resulting *within admiralty jurisdiction* from the collision which happened over by the New York shore and (whether or not damage is also recovered for the losses on the platform) this court has the right to fix the loss from interference with the using of the scow itself. The item for demurrage will be allowed.

The item for wages of the crew of the scow is in the same category,

but the libelant has admitted that at least one-half of these wages cov-ered work devoted to repairing and resetting the platform, and hence one-half of the wage item will be disallowed.

The exceptions therefore will be sustained to the extent of allowing $225 for demurrage and $93.12 wages, for which the libelant may have a decree in addition to the sum of $244.49 found by the master. The libelant will be allowed a docket fee and one-half of other taxable costs.