Greek, Judge,
delivered the opinion of the court:
These proceedings were instituted pursuant to a resolution adopted by the Senate of the United States, on June 3, 1926, as follows:
“Resolved, That the bill entitled £A bill (S. 3366) for the relief of the Passaic Valley Sewerage Commissioners’, now pending in the Senate, together with all the accompanying papers, be, and the same is hereby, referred to the Court of Claims, in pursuance of the provisions of an Act entitled ‘An act to codify, revise, and amend the' laws relating to the judiciary’, approved March 3, 1911; and the said Court shall proceed with the same in accordance with the provision of such Act and report to the Senate in accordance therewith.”
This resolution was preceded by the introduction of a bill in the Senate of the United States on March 1 (calendar day, March 2), 1926, the same being reád twice and referred to the- Committee on Claims. The bill reads as follows:
“A Bill
“fOR THE RELIEF OF THE PASSIAO VALLET SEWERAGE COMMIS- ■ SIONERS
“Be it enacted by'the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury be, and he is hereby, authorized and directed to pay, out of moneys in the Treasury not otherwise appropriated, the sum of $110,000 to. the Pas-saic Valley Sewerage Commissioners, a body politic and corporate, created by' and under the laws of the State of New Jersey, and by-said laws vested with the title to the *509 Passaic Valley sewer, for damage done to the outlet of said sewer at or near Robbins Reef in the harbor of New York by the steamship Leviathan, a passenger vessel owned by the Government of the United States and operated under the direction and control of the United States Shipping Board and United States Shipping Board Emergency Fleet Corporation, on the 21st day of December 1923.”
The bill states the nature of the claim made against the Government. The merits of the case must be determined from,' the material facts which are set out in the findings and the law which is applicable thereto.
It appears that the steamship Leviathan which was operated by the United States, in coming into the harbor of New York, collided with one of the pipes of plaintiff’s sewerage system laid in the bottom of the harbor at a point outside of the channel through which the ship should have been navigated. While coming up the harbor the navigation of the ship was in charge of a pilot. At a certain point it became necessary to make a turn to the right in order to follow the proper channel and the evidence shows clearly, as we think, that by fault on the part of the pilot the ship did not begin to turn as soon as it should have. As a result the ship ran aground, and in so doing, as stated above, cut through one of the pipes of plaintiff’s sewerage system doing damage thereto in the sum of $109,088.03.
It is conceded on the part of plaintiff that as the damage for which relief is sought was done to a structure affixed to land the plaintiff’s case is not one of which courts of admiralty would take jurisdiction although caused by a ship or some other floating structure. See Johnson v. Chicago & Pacific Elevator Co., 119 U. S. 388; Martin v. West, 222 U. S. 191; The Poughkeepsie, 162 Fed. 494. Plaintiff’s case is therefore in the nature of an action in tort at common law against the owner of the vessel which caused the injury.
It is also conceded by plaintiff that at the time when the ship ran aground and cut one of plaintiff’s sewer pipes, it was in charge of what is known as a compulsory pilot, that is, a pilot whom the law required to be put in charge of the navigation of the vessel as it proceeded up the harbor. In a common law action of this nature the Supreme Court has *510 held that a compulsory pilot is not the agent of the, owner 'of the vessel, and consequently the owner cannot be held responsible for the 'negligence of the pilot. Homer Ramsdell Transportation. Co. v. Compagnie Générale Transatlantique, 182 U. S. 406. We do not understand counsel for the plaintiff to contend to the contrary, but they cite Jure y: United Fruit, Co., 6 Fed. (2d) 6, to show that even though the ship was in charge of a compulsory pilot and there was negligence on his part, if there was also negligence on the part of the master or officers of the ship which proximately contributed to the injury done, the shipowner would be liable.
, The ultimate question in the case, therefore, is whether the evidence shows such negligence on behalf of the officers of the ship, , It is contended on behalf of the plaintiff that it does, but we are unable to find it.
As above stated, the evidence shows that the accident could have; been averted if the pilot had issued directions earlier for making the turn necessary to follow the channel. It appears that the navigating officer of the ship, becoming satisfied that the pilot was not going to take action soon enough, gave orders which resulted in the turn being started a little before the pilot gave directions for that purpose. But we cannot see any negligence in this. It also appears that the navigating officer thought the turn ought to be made earlier and made suggestions to the pilot accordingly, which were not followed, but (the fact that the opinion of the navigating officer or the captain of the ship as to the course which ought to be followed differed from the judgment of the pilot would not authorize the officers to take the ship out of the hands of the pilot. If this were the rule there would be little use in requiring a ship to take on board a pilot to direct its course through the harbor. It is obvious that one or the other must be in control. If it appears that the pilot is incompetent by reason of intoxication or manifest incapacity so that he is incapable of performing his duties properly and the danger is imminent and known to the officers of the ship, then under such or similar circumstances the officers of the vessel may be under an obligation to take the ship out of the control of the pilot and op *511 erate it themselves. But nothing of the kind appears from the evidence. The navigating officer did, it is true, after he was satisfied that the pilot was not going to make the turn quick enough, give an order for the purpose of starting the turn. But it was then too late, and we can see nothing in this action which shows that there was negligence in his not taking charge of the ship earlier. There was in fact no way in which the ship’s officers could determine that the pilot was not going to act soon enough until the last point had been reached and passed by the ship. Indeed, there is much question as to whether the navigating officer was justified in interfering at all. There is dispute in the evidence as to whether the accident was caused by a freshet running out of the Kill van Kull, but in any event the reason for the employment of a pilot is “because he is presumed to have knowledge of the tides and currents and their effects upon thé ship and of all other dangers affecting the safety of the vessel due to local conditions.” The Framlington (Jourt, 69 Fed. (2d) 300, 304. The .officers of the ship are not expected to have such a complete knowledge and until the danger is imminent may, as we think, properly conclude that the judgment of -the pilot is better than theirs.
The plaintiff contends that a contributing cause of the accident was the fact that two of the reversing turbines were in such a condition that they would furnish only about twenty-five percent of their normal power. But the ship had been successfully navigated in Southampton Harbor, where sharper turns were required. The pilot was informed in advance of the condition of these turbines and in directing the course of the ship should have made such allowance therefor as was necessary under the circumstances. It is a fair inference from the testimony that the accident could have been avoided by starting the ship on the turn earlier and there is no satisfactory evidence to explain, or excuse his failure so to do. We therefore conclude that he.was negligent in operating the ship.
We find no negligence bn the part of the officers of the ship and consequently no cause of action against the Government which was operating it. In our op inion, if any *512 thing is awarded to plaintiff by reason of the injury to its sewer pipe it must be in the nature of a gratuity.
The foregoing findings and opinion will be reported to Congress.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and Booth, OMef Justice, concur.